**Exhibit 1**



INTELLE©TUAL PROPE®TY LAW

Patent, Trademark, Copyright and Internet Law

1914 Akron-Peninsula Rd., Akron, OH 44313 ▪ P: 330.434.9999 ▪ F: 330.434.8888 ▪ www.etblaw.com

May 8, 2025

Mr. Glenn D. Bellamy
Wood Herron & Evans LLP
600 Vine Street, Suite 2800                        **VIA E-MAIL ONLY**
Cincinnati, OH 45202                               gbellamy@whe-law.com

Re:    ABC IP, LLC (Patent Owner); Rare Breed Triggers, LLC (*Alleged Exclusive Licensee*)
       *U.S. Patent No. 12,038,247*
       Cease-and-Desist Letters Regarding Super Safety

Dear Mr. Bellamy:

Our firm represents several entities to which you sent cease-and-desist letters on behalf of ABC IP, LLC ("ABC") regarding its U.S. Patent 12,038,247 ("Patent"). These entities include: 80Mills LLC d/b/a Tactical Titan Supply; DNT LLC d/b/a Deez Nutz Tactical; Z3 Productions, LLC d/b/a Z3 Pro; Harrison Gunworks LLC; Grey Market Research & Development LLC; and Stark80 LLC.

As a preliminary observation, none of your letters accused any of these entities of direct infringement of the Patent under 35 U.S.C. §271(a). Instead, the only accusations are of indirect infringement under §§ 271(b)-(c). Nor did any of the letters identify any instances of underlying direct infringement that is a predicate for indirect infringement. *See, e.g., Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1351 (Fed. Cir. 2022); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012).

ABC accuses various accessory components of contributing to the infringement of "at least claims 15 and 20," though no other claim is identified apart from these two. ABC also asserts that the sale of such components induces infringement of the Patent. Our clients take such accusations very seriously. We have reviewed the letters, the Patent, and the accused products, and have concluded that ABC's accusations are meritless.

In reviewing the Patent's prosecution history, we note that asserted claims 15 and 20 were not present in the as-filed Patent application but were added by a preliminary amendment on April 4, 2024 – almost a year after the application was filed and several months after Hoffman Tactical LLC published information regarding the Super Safety on its website. The scope of the added claims (especially, the "cam" limitation and the "whereupon" limitations) differs markedly from the prior (as-filed) claims and is not supported by the as-filed specification and drawings. It is obvious that Mr. Blakley did not invent the Super Safety but an entirely different design, and the addition of the new claims through the preliminary amendment was just an attempt to stretch the claim scope to encompass others' designs. *See Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019). Our clients reserve their arguments regarding the Patent's invalidity.

While ABC accuses various accessory components (singly or in combination), the core of all of its accusations is the Super Safety (which includes a 3-position (dual mode) cam, a lever, and a detent). Because of the centrality of the Super Safety, this response focuses on the Super Safety itself, rather than the multiple kit variants or sub-components offered by the various entities.

By asserting only indirect infringement, ABC implicitly concedes that the Super Safety is missing at least one claim limitation of each claim (e.g., the Super Safety itself does not include a hammer or a disconnector). Among other non-infringement reasons (which are reserved), the Super Safety does not meet the "whereupon in a forced reset semi-automatic mode" limitation of claims 15 and 20. *See TEK Global, S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 784 (Fed. Cir. 2019) (infringement requires each claim limitation to be found in an accused product). Reviewing both claims, the cam must be movable between a first position (at which the cam lobe does not force the trigger into the set position, per claim 20) and a second position (at which the cam lobe does force the trigger into the set position). Per claims 15 and 20, the cam must be in the first position when the mechanism is in standard semi-automatic mode, and the cam must be in the second position when the mechanism is in the forced reset semi-automatic mode. However, when the Super Safety is in the active reset mode (which ABC presumably equates to the forced reset semi-automatic mode), the cam is not constrained to be only in the second position; indeed, the cam must be in the first position for the firearm to fire. Instead the cam rotates/cycles between the first position and the second position as the bolt carrier shuttles rearward and forward.

Furthermore, claims 15 and 20 state that "rearward movement of the bolt carrier causes rearward pivoting of said hammer *such that said disconnector hook is prevented from catching said hammer hook* . . . ." However, the rearward bolt carrier movement does not prevent the disconnector hook from catching the hammer hook (even overlooking that the Super Safety does not include the disconnector or the hammer, as noted above); indeed, the rearward pivoting of the hammer *causes* the disconnector hook to *catch* the hammer hook, and no further rearward pivoting of the hammer *prevents* the disconnector hook from catching the hammer hook. Stated alternatively, when the cam is in the second position (where the cam lobe forces the trigger toward the set position), there is no rearward pivoting of the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting

Additionally with respect to claim 20, that claim recites a safety selector and a cam as separate elements, and the specification and drawings clearly show those components as distinct, rather than being one and the same structure. The Super Safety does not include a separate safety selector that moves between safe, standard semi-automatic, and forced reset semi-automatic positions; instead that function is performed by the Super Safety cam, which (as noted) is claimed as a separate element from the safety selector. Furthermore, because it is the safety selector that selects the standard semi-automatic position or the forced reset semi-automatic position, and because the Super Safety does not include the claimed safety selector, neither "whereupon" limitation is met.

Regarding the indirect-infringement accusations, both induced infringement and contributory infringement require knowledge of the relevant patent. *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639 (2015). Yet, despite requesting sales information from July 16, 2024, ABC provided no indication

that any of our clients knew of the Patent as early as its date of issuance. Indeed, as far as we can tell from your March 31 and April 1, 2025 letters, those letters were the first time that their recipients obtained knowledge of the Patent.

Furthermore, induced infringement requires knowledge that the induced acts constitute infringement. *Commil USA*, 575 U.S. at 639. However, as explained above, the Super Safety *does not* infringe the Patent claims identified in ABC's letters; thus, our clients assuredly do *not* have knowledge that any induced acts (presumably installing the Super Safety in a firearm) would result in infringement.

Similarly, contributory infringement requires the accused component to have no substantial non-infringing uses and for the alleged infringer to have knowledge of this. But as explained above, the Super Safety does not infringe the asserted Patent claims, which means the Super Safety has substantial non-infringing uses; it also means that our clients lack knowledge that the Super Safety has no substantial non-infringing uses.

For the above-discussed reasons, our clients decline to provide the financial information demanded in ABC's letters and to cease selling the Super Safety. If you have any further information that is relevant to the issues raised in ABC's letters or our reply, we will be happy to consider them.

Sincerely,

**EMERSON, THOMSON & BENNETT, LLC**

*/s/ John M. Skeriotis*

John M. Skeriotis