Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Glenn D. Bellamy, Ohio Bar No. 0070321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

*Attorneys for Plaintiffs*

<div style="border:1px solid black; float:right;">

EXHIBIT A
</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## EASTERN DIVISION AT POCATELLO

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO.  4:25-CV-00299 |
| **and** | ) ) | **JURY TRIAL DEMANDED** |
| **Rare Breed Triggers, Inc., a Texas corporation,** | ) ) ) | |
| **Plaintiffs.** | ) ) | |
| **v.-** | ) ) | |
| **Harrison Gunworks LLC, an Idaho limited liability company,** | ) ) ) | |
| **and** | ) ) | |
| **Tyler Harrison, an individual,** | ) ) | |
| **Defendants.** | ) ) | |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which ABC IP LLC ("ABC" or "Plaintiff") accuses Harrison Gunworks LLC ("Gunworks") and Tyler Harrison ("Harrison") (collectively, "Defendants"), of infringing U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 10,514,223, ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent") as follows:

### PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed Triggers, Inc. ("Rare Breed") is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      Upon information and belief, Defendant Harrison Gunworks LLC ("Gunworks") is a limited liability company existing under the laws of the state of Idaho and has a place of business at 7804 West Katsilometes Road, Pocatello, ID 83204.

4.      Upon information and belief, Defendant Tyler Harrison ("Harrison") is an individual residing at 1467 Surprise Valley Road, Pocatello, ID 83201 who solely operates and directs the complained-of activities of Gunworks.

### JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284-85.

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.      Personal jurisdiction and venue over Defendant are proper in this District because the Defendants reside in and/or has a place of business this district.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant resides in this district and/or has a regular and established place of business in this District.

## **BACKGROUND**

9.       This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent No. 12,038,247 ("the '247 Patent"). A true and correct copy of the '247 Patent is attached hereto as Exhibit A.

10.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

11.     ABC is the current assignee and owner of all right, title and interest in and to the '247 Patent. This assignment has been recorded at the United States Patent and Trademark Office ("USPTO").

12.     This lawsuit asserts direct infringement of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent. True copies of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent are attached hereto and Exhibits B, C, D, and E, respectively.

13.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019.

14.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023.

15.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.

16.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025.

17.     ABC is the current assignee and owner of all right, title and interest in and to the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent. These assignments have been recorded at the USPTO.

18.     This lawsuit asserts direct infringement of the '784 Patent. A true and correct copy of the '784 Patent is attached hereto as Exhibit F.

19.     ABC is the current assignee and owner of all right, title and interest in and to the '784 Patent. This assignment has been recorded at the USPTO.

20.     The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. The application from which the '784 Patent issued claimed a priority date of November 5, 2021.

21.     Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

22.     On March 28, 2025, counsel for Plaintiffs sent a cease and desist demand letter to Defendant Gunworks, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

23.     On May 8, 2024, counsel for Plaintiffs sent a message to John M. Skeriotis, counsel for Defendants, informing them of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent in view of a newly offered product and expressly asserting infringement of these additional patents.

**The Inventions**

24.     By way of background, a typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

25.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull

of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

26.    In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

27.    The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

28.    The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

29.    The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

30.    The '247 Patent invention teaches a forcible reset mode of the trigger member by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

31.    The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. The invention of the '784 Patent overcomes the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

## The Infringing Devices

32.    On information and belief, Defendants are currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 and the '784 Patents.

33.    On information and belief, Defendants sell or offers for sale the Infringing Device via the website harrisongunworks.com.  Exemplary photographs of these are shown below:





34.     Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When

these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 and the '784 Patents.

35.    On information and belief, Defendants sell or offers for sale an "AR15 Super Safety Installation Service" via the website harrisongunworks.com. As part of Defendants' AR15 Super Safety Installation Service, Defendants install the Infringing Device in firearms with a standard AR-pattern hammer, disconnector, and standard springs. Exemplary photographs of Defendants' AR15 Super Safety Installation Service are shown below:



36.    Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

37.    These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The defendant knows that these are especially made or especially adapted for use in an infringement of the '247 and the '784 Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

38.    Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

39.    Defendant instructed purchasers to assemble the Infringing Devices in a way that induces infringement of the '247 Patent.

40.    The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

41.    The user can move the cam between safe, standard semiautomatic disconnector, and forced reset semiautomatic modes.

42.    Defendants sell or offer for sale the AR15 Super Safety Installation Service whereby Defendants install the Infringing Device into a firearm that results in the firearm including

all the components of the patented combination claims and, thus, directly infringes the '247 and '784 Patents.

43.     For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and the '784 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(b) and/or (c).

44.     Defendants have also offered for sale a second type of forced reset trigger mechanism they call the Defender FRT that provides a complete, drop-in trigger mechanism replacement ("the Defender FRT").

45.     As shown below, the Defender FRT is a dual mode device that operates as a standard, disconnector trigger mechanism in one mode and as a forced reset trigger mechanism is in a second mode.



46.     When the Defender FRT operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position according to the invention described and claimed in the of the '223 Patent.

47.     As claimed in the '003 Patent, the '336 Patent, and the '807 Patent, the Defender FRT has the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

48.     On information and belief, at least the major components of this Defender FRT are imported from Bosnia.

49.     In view of the Defendants' continued infringement after ABC's demand, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

50.     The allegations set forth in paragraphs 1-49 are fully incorporated into this First Count for Relief.

51.     Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

52.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended is illustrated in the chart below:

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange). |



(Plaintiff-generated renderings of Super Safety here and below)

| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.  **(Hammer Set Position Above)** **(Hammer Released Position Above)** |

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions.  The trigger member (Brown) has a sear.<br><br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>**(Trigger Member Set Position Above)** |

| | |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position.<br><br><br><br>**(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red).<br><br><br><br>**(Disconnector Hook Engaged Above)** |

| | |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)  **(Super Safety Cam with Lobe and Lever)** |

| | |
|---|---|
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br><br><br>**(Cam and Lobe First Position Above)**<br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br><br><br>**(Cam and Lobe Second Position Above)** |

| | |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,<br><br> |
| said cam is in said first position, | the cam is in the first position.<br><br> |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook.<br><br> |

| | |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.  |

| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode,  |
| --- | --- |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook.  |

| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull the trigger member (Brown) to fire the firearm.  |

53.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

54.     The Defendants instruct their customers to assemble the components they sell into an infringing combination of parts. Thus, Defendant actively induces infringement of the '247 Patent.

55.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271 (a), (b), and/or (c).

56.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

57.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

58.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '247 PATENT

59.     The allegations set forth in paragraphs 1-58 are fully incorporated into this Second Count for Relief.

60.     Defendants have and continue to directly infringe at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing all

components of the claimed combination (the Infringing Device) to be used without authority within the United States.

61.    An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the chart in paragraph 52, above.

62.    Defendants sell the AR15 Super Safety Installation Service whereby Defendants install the Infringing Device into a firearm that results in the firearm including all the components of the patented combination. Thus, Defendants directly infringe the '247 Patent.

63.    Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(a).

64.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '247 Patent.

65.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

66.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **COUNT III – DIRECT INFRINGEMENT OF THE '784 PATENT**

67.    The allegations set forth in paragraphs 1-66 are fully incorporated into this Third Count for Relief.

68.    Defendants have and continue to directly infringe at least Claim 1 of the '784 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components

of the claimed combination (the Infringing Device) to be used without authority within the United

States.

68. An exemplary comparison of the Infringing Device with claim 1 of the '784 Patent

when assembled and used as intended with the combination of parts supplied is illustrated in the

chart below:

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |



**Super Safety Installed**
(Plaintiff-generated renderings of Super Safety
here and below; Locking member and bolt carrier
shown here and below in section view for clarity)

"The Super Safety is a mechanism that actively resets
the trigger of a firearm to allow the operator to fire
again, quickly, and efficiently.  The Super Safety has
been designed to operate with AR-15 pattern firearms
that use a mil-spec bolt carrier and fire control group."
Super Safety Guide at 1.

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement.<br><br><br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br><br>**Unlocked Second Position** |

| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |
|---|---|
|  |  |

| | |
|---|---|
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier.  |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.  **Unlocked Second Position** |

| | |
|---|---|
| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver.<br><br> |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green).<br><br> |

Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.



"The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled the hammer can transfer torque to the cam via the upper and lower contact surfaces and. Note that the void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (referenced numerals removed for clarity). Super Safety Guide at 4.
https://www.scribd.com/document/843484122/Super-Safety-Documentation

| and a deflected position. | The lever is now shown deflected independent of the body. |
|---|---|
|  |  |

72.    Claim 4 depends from claim 1 and further specifies "wherein the locking member deflectable portion pivots relative to the body portion." This creates the legal presumption that the "deflectable" limitation is not limited to pivoting movement. And thus, claim 4 is also infringed.

73.    Defendants sell the "AR-SS D2 Curved Kit" and the "AR-SS D2 Straight Kit." As such, Defendants are selling all the components of the patented combination. Thus, Defendants directly infringe the '784 Patent.

74.    Defendants sell the AR15 Super Safety Installation Service whereby Defendants install the Infringing Device into a firearm that results in the firearm including all the components of the patented combination. Thus, Defendants directly infringe the '784 Patent.

75.    Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(a).

76.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '784 Patent.

77.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

78.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV – DIRECT INFRINGEMENT OF THE '223 PATENT

79.     The allegations set forth in paragraphs 1-77 are fully incorporated into this Fourth Count for Relief.

80.     Upon information and belief, Defendants have and continue to willfully directly infringe at least Claim 4 of the '223 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

81.     Because the claims describe the invention as "comprising" the enumerated elements, the scope of the claims are not limited to those elements and the inclusion of additional structures or features not specified in a claim does not avoid infringement.

82.     An exemplary comparison of the Infringing Unit with claim 4 of the '223 Patent is illustrated in the chart below

| Claim Language | Infringing Unit |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | The Infringing Unit is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.



An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.



| | |
|---|---|
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Unit includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins.  |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Infringing Unit includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions. |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; | The Infringing Unit includes a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions. |



The trigger member has a surface (shown above) positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled.

The contact causes the trigger member to be forced to the set position.

| | |
|---|---|
| a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position. | The Infringing Unit includes a locking bar that is pivotally mounted in the housing. |



The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.

The locking bar is movable against the spring bias to a second position when contacted by the bolt

| | carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |
|---|---|

83.    Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

84.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '247 Patent.

85.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

86.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V – DIRECT INFRINGEMENT OF THE '003 PATENT

87.    The allegations set forth in paragraphs 1-85 are fully incorporated into this Fifth Count for Relief.

88.    Upon information and belief, Defendants have and continues to willfully directly infringe at least Claim 4 of the '003 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

89.    An exemplary comparison of the Infringing Unit with claim 4 of the '003 Patent is illustrated in the chart below

| Claim Language | Infringing Unit |
|---|---|

| | |
|---|---|
| 4. A firearm trigger mechanism comprising: | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>The Infringing Unit is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | <br><br>A housing has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | A hammer having a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| | |
|---|---|
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | <br><br>A trigger member has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions. The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the hammer and trigger member set positions and are out of engagement in the hammer and trigger member released positions. |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | <br><br>A disconnector has a hook for engaging the hammer and is mounted in the housing to pivot on the trigger member pin. |

| | |
|---|---|
| a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and |  |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | <br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. |

| | A safety selector is mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. |
|---|---|
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member. |

90.    Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

91.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '247 Patent.

92.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

93.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VI – DIRECT INFRINGEMENT OF THE '336 PATENT

94.     The allegations set forth in paragraphs 1-92 are fully incorporated into this Sixth Count for Relief.

95.     Upon information and belief, Defendants have and continues to willfully directly infringe at least Claim 3 of the '336 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

96.     An exemplary comparison of the Infringing Unit with claim 3 of the '336 Patent is illustrated in the chart below.

| Claim Language | Infringing Unit |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Infringing unit is firearm trigger mechanism.<br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. |

a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin,



The housing has first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,



The hammer has a sear catch and a hook for engaging a disconnector and mounted in the

| | housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier |
|---|---|
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, |  The disconnector has a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin. |

a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and



A locking member is mounted in the housing to pivot on a transverse locking member pin. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.

a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,



|  | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. |
|  | A safety selector is mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. The safety selector is configured such that, when said safety selector is in the forced reset semi-automatic position, it causes the disconnector to be repositioned and in doing so prevents the disconnector hook from catching the hammer hook. |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire |

| | |
|---|---|
| the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | the firearm without manually releasing the trigger member. |

97.    Accordingly, Defendant's sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

98.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '336 Patent.

99.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

100.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VII – DIRECT INFRINGEMENT FO THE '807 PATENT

101.    The allegations set forth in paragraphs 1-99 are fully incorporated into this Seventh Count for Relief.

102.    Upon information and belief, Defendants have and continue to willfully directly infringe at least claim 1 of the '807 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

103.    An exemplary comparison of the Infringing Unit with claim 1 of the '807 Patent is illustrated in the chart below

| Claim Language | Infringing Unit |
|---|---|

| | |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Infringing unit is firearm trigger mechanism.<br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br><br>The hammer has a sear catch and a hook and is mounted in housing that fits into a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions. The hammer pivots rearward by rearward movement of a bolt carrier. |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, |  |

| | |
|---|---|
| | The trigger member has a sear and is mounted in a housing that fits into a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the hammer to cause said trigger member to be forced to the set position.<br><br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. |
| a disconnector having a hook for engaging said hammer hook and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, |  |

| | The disconnector has a hook for engaging the hammer hook and is mounted in a housing that fits into the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, which it shares with the trigger member. |
|---|---|
| a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier being forward movable between of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member is movably mounted in a housing that fits into the fire control mechanism pocket. The locking member is movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing said trigger member to be moved to the released position. The locking member is spring biased toward the first position and is moved against said spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| | |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | <br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>The safety selector is movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions. |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release said trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set |

| | positions so that the user can pull the trigger member to fire the firearm. |
|---|---|
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. <br><br> In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer,causing the trigger member to be forced to the set position, the safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing said trigger member. |

104.    Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

105.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '807 Patent.

106.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

107.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a. A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent;

b. A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c. A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

d. A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

e. A judgment in favor of Plaintiffs that Defendants have infringed the '223 Patent;

f. A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

g. A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in

active concert therewith from infringement or contributing to the infringement of the '223 Patent, or other such equitable relief as the Court determines is warranted;

h. A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '223 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

i. A judgment in favor of Plaintiffs that Defendants have infringed the '003 Patent;

j. A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

k. A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent, or other such equitable relief as the Court determines is warranted;

l. A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '003 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

m. A judgment in favor of Plaintiffs that Defendants have infringed the '336 Patent;

n. A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in

active concert therewith from infringement or contributing to the infringement of the '336 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

o. A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '336 Patent, or other such equitable relief as the Court determines is warranted;

p. A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '336 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

q. A judgment in favor of Plaintiffs that Defendants have infringed the '807 Patent;

r. A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '807 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

s. A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '807 Patent, or other such equitable relief as the Court determines is warranted;

t. A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '807

Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

u. A judgment in favor of Plaintiffs that Defendants have infringed the '784 Patent;

v. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '784 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

w. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '784 Patent, or other such equitable relief as the Court determines is warranted;

x. A judgment and order requiring Defendants to pay to Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '784 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

y. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Date: January 9, 2026

Respectfully submitted,

s/Glenn D. Bellamy
Glenn D. Bellamy (Ohio Bar No. 0070321)
Wood Herron & Evans, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
gbellamy@whe-law.com
Telephone: (513) 707-0243
Fax: (513) 241-6234

and

Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2026, I electronically filed the foregoing with the Clerk of the United States District Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.


_s/ Glenn D. Bellamy_____
Glenn D. Bellamy